UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                            PLAINTIFF

v.                                                            CRIMINAL ACTION NO. 3:08CR-47-S

RONALD UNDERWOOD                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the objections of the United States to the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge that all evidence seized pursuant to a search warrant executed at the home of the defendant on March 28, 2008 be suppressed. For the reasons set forth herein, we disagree with the magistrate judge's report in a number of significant respects. The parties have no objection to the findings of fact. We will therefore accept and adopt them. We will accept and adopt the conclusions of law only in part, and we reject the recommendation. Accordingly, the court will deny the defendant's motion to suppress.

We need not restate the factual findings in their entirety. The facts are set out in detail with citations to the record on pages 2 - 13 of the magistrate judge's report ("Mag. Report;" DN 54). For our purposes, it is sufficient to note that Mr. Underwood apparently came under suspicion when an anonymous call to the Louisville Metro Police Department ("LMPD") tip line stated that a Myspace account holder, a 50 year-old male by the name of "Ronnie" had a "very pornographic" Myspace page and that he might be a "pedifile [sic]." The caller indicated that all of the friends on Ronnie's Myspace page appeared to be very young.

Detective Dan Jackman with the LMPD Crimes Against Children Unit began an investigation by opening an internet account using the undercover identity of a 13-year-old boy. He sent a friend request to the Myspace profile in question and received a response to the offer of friendship. There was an exchange of internet instant messages via Myspace which allegedly included suggestion of deviant sexual acts the Myspace messenger wished to perform on/with the 13-year-old. The messenger revealed the existence of another internet account on the Yahoo! internet service. Detective Jackman found that the profile for the account displayed the same avatar, a picture of a shirtless man, appearing on the Myspace account. The messenger also allegedly expressed a "strong interest in meeting Jackman's 13-year-old undercover identity in real life for the purpose of having sex."[1]

Detective Jackman then went through the process of identifying the individual associated with the accounts. As a result of the issuance of grand jury subpoenas to various internet service providers, Ronald Underwood's name and home address were discovered by the police. Jackman noted that all of the information consistently confirmed Ronald Underwood to be the owner of the e-mail address associated with the Myspace account, the Yahoo! account, and another IP address belonging to the "Okolona Batter's Cage." Jackman confirmed the information concerning Underwood's identity and home address obtained from the internet providers by comparing it with information obtained from the Kentucky Bureau of Drivers Licensing and the Jefferson County Property Valuation Administration Office.

---

[1] In Jackman's investigative report, he indicated that there were requests that the 13-year-old send nude photographs of himself, and that the messenger transmitted nude photographs of himself engaging in sexual acts. The information concerning the transmission of and requests for photographs was not provided to the judicial officer when the search warrant for Underwood's house was sought.

Jackman then sought a search warrant from the state court. The affidavit in support of the application identified Underwood and his house and identified personal property to be seized: "a computer, computer hardware, and those more specifically described in Attachment "A" which is attached hereto and made a part hereof." Attachment "A" listed items such as computers, hard drives, zip drives and other storage devices as well as iPods, cameras, cell phones and other electronic devices, web cams, printing devices and a wide range of items which might constitute evidence of child pornography crimes. It was established that this Attachment "A" is a standard list utilized by LMPD officers for seizures in child pornography cases. The search warrant obtained by Jackman mirrors the affidavit in its listing of the items to be seized. As in the affidavit, the search warrant specifies on its face "a computer, computer hardware..." At the outset, the search warrant states that "there is probable and reasonable cause for the issuance of this Search Warrant as set out in the affidavit attached hereto and made a part hereof as if full set forth herein..." Thus, the warrant references probable cause established by the accompanying affidavit.

In describing the investigation, Detective Jackman recited the development of the fictitious 13-year-old boy profile, the communications which occurred with the then-unknown Myspace messenger, and the identification of that individual as Ronald Underwood. Significantly, Jackman related the information he obtained about the "Ronnie" Myspace profile and the BRPLAYER99 yahoo! account and the fact that the same avatar was pictured on both accounts. He also related that Ronnie discussed various deviant sexual acts he wished to perform on/with the 13-year-old and that Ronnie expressed a strong interest in meeting in real life to have sex. Jackman explained the process of discerning Ronald Underwood's identity through the internet service providers, drivers license bureau and property valuation office.

Thus Detective Jackman walked the issuing judicial officer through the development of probable cause to believe that Ronald Underwood had committed the crime of enticement.

It is beyond cavil that Detective Jackman did not present in his affidavit probable cause to believe that child pornography crimes had been committed.[2] The warrant sought the seizure of items relating to child pornography crimes in addition to other evidence and thus was overbroad. The warrant also authorized the seizure of items which constitute evidence of the crime of enticement for which probable cause was articulated and established to the satisfaction of the issuing judicial officer.

Underwood urged in his post-hearing brief (DN 53) that the question of probable cause relating to enticement is "[s]till unresolved and not argued or briefed by either side at this point..." DN 53, p. 4. However, the post-hearing brief of the United States argued probable cause extensively (DN 52, pp. 5-8), concluding in part,

> A search of Underwood's computer and related materials (hard drives, routers, ZIP drives, etc.) sufficiently relates to the crime of online enticement because the Affidavit alleges Underwood's use of a computer. The Affidavit also extensively discusses the factual link between the various internet accounts and Underwood's Louisville address. [citation omitted]. Therefore, the search of Underwood's computer and hard drive met constitutional standards.

Further, the magistrate judge concluded in his report that "[i]n this case, the affidavit submitted as part of the warrant application clearly establishes probable cause to search Underwood's computer for evidence of the online chats and images associated with his online profile and that of the undercover officer." Mag. Report, p. 20. This court agrees with that conclusion.

The court disagrees with the magistrate judge's later conclusion that "...the warrant for Underwood's computer authorized a search for only one thing, evidence of child pornography...[Any

---

[2] We do not consider the alleged transmission of or request for nude photographs in this analysis.

redaction of the warrant]...to exclude those items that are not supported by probable cause in the affidavit in support of the warrant application would simply leave a blank in the space provided on the warrant for the particularized description of the property to be seized and searched." Mag. Report, pp. 20-21. This conclusion is not consistent with the language of the warrant itself.

The warrant authorized the officers to search for and seize a computer, computer hardware, and those items more specifically described in Attachment "A." The Attachment "A" items relating particularly to child pornography investigations are not supported by probable cause and thus could not constitutionally be seized. However, the "computer" and "computer hardware" itemized on the face of the warrant clearly relate to the crime of enticement. The magistrate judge concluded as much when he stated that "[a] search of Underwood's computer and related materials...sufficiently relates to the crime of online enticement because the Affidavit alleges Underwood's use of a computer..." Mag. Report, p. 20. Thus Attachment "A" could be excised and the warrant would still properly authorize the seizure of a computer and computer hardware from Underwood's residence. *United States v. Christine,* 687 F.2d 749 (3d Cir. 1982) contemplates just such a result. In *Christine,* the warrant was similarly overbroad. It permitted the seizure of a broader range of items than was supported by probable cause. In permitting redaction, the court stated that

> Each part of the search authorized by the warrant is examined separately to determine whether it is impermissibly general or unsupported by probable cause. Materials seized under the authority of those parts of the warrant struck for invalidity must be suppressed, but the court need not suppress materials seized pursuant to the valid portions of the warrant.

*Christine*, 687 F.2d at 775.

We disagree with the magistrate judge's conclusion that the case of *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008) is applicable and mandates suppression in this case.

First, in contrast to the finding in *Hodson*, the warrant in this case authorized the search for and seizure of a computer and computer hardware which might constitute evidence of enticement, the crime for which probable cause was established. The warrant additionally unconstitutionally authorized the seizure of a wide variety of items (Attachment "A") which might constitute evidence of child pornography. We have found these items clearly identifiable and severable. In *Hodson*, as the warrant authorized the seizure of evidence *only* of child pornography, the court proceeded to consider whether the "good faith" doctrine justified exempting the seized evidence from suppression. The court determined that it did not. Thus, we find that the case at bar differs from *Hodson* on the facts.

Second, the magistrate judge in *Hodson* rejected out-of-hand an argument that the evidence would have been inevitably discovered:

> Along the way, the magistrate judge inserted a footnote in which he summarily rejected the government's third argument, inevitable discovery, as unsupported by the record and implausible in light of the narrowness of the search described in the warrant.

*Hodson*, 543 F.2d at 291. We conclude here, however, that inevitable discovery is clearly supported by the record and is fully consistent with the nature and scope of the search, as properly limited.

The warrant in the case at bar properly authorized a search for a computer and computer hardware in seeking evidence relating to the crime of enticement. Once seized, the computer drives were searched under the protocol described by the forensic examiner. Stated in its most simplistic form, the Forensic Toolkit software sorts and dumps the retrieved computer files into folders tabbed "graphics," "text," and "explore." Detective Jackman explained that he began his case agent review of the computer by opening the "graphics" tab to look for images of his undercover profile and Underwood's Myspace profile. When he clicked on the "graphics" tab, all of the images recovered

from Underwood's computer were displayed in thumbnail form. His review uncovered images in the "graphics" file that related to the investigation of the crime of enticement, including images from Underwood's Myspace profile. Jackman's inevitable discovery of the other images in the "graphics" file resulted from a properly authorized search for evidence of the crime of enticement.

Jackman testified that he was simultaneously looking for evidence of child pornography, as the search warrant permitted him to do so. His authorized investigation for evidence of enticement, however, took him to the "graphics" tab in search of images relating to his undercover profile and Underwood's Myspace profile in any event. There is simply no basis to suppress this discovery of evidence of other crimes.

The magistrate judge rejected the application of caselaw which permits the use of inevitably discovered evidence where a search warrant authorizes the seizure of evidence of multiple crimes, stating "We are not faced with a situation such as in other cases where a search warrant expressly authorizes the search for several different types of evidence of multiple crimes, one of which is supported by probable cause and the other is not." Mag. Report, p. 27. We disagree with this statement. We have concluded that the warrant authorized the seizure of a computer and computer hardware in a search for evidence of enticement and child pornography, while the probable cause articulated in the affidavit in support of the warrant related only to the crime of enticement. Thus we find the principles articulated in *United States v. Westerlund*, Case No. 1:09CR-154, 2009 WL 3711555 (W.D.Mich. Nov. 4, 2009) applicable here.

The court in *Westerlund* found that the examination of the seized computers for images of the defendant providing intoxicants to minors inevitably would have led to the discovery of images of child pornography "because the forensic search cannot distinguish between images of child

pornography and images of minors with alcohol, all images on the computer would have been reviewed by the examiner." *See*, Mag. Report, p. 28, *quoting, Westerlund*, *supra*., at *5.[3] In sum, we find the language in *Nix v. Williams,* 467 U.S. 431, 447 (1984), quoted in the magistrate judge's report at pg. 33 to be apropos to this analysis:

> If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means...then the deterrence rationale has so little basis that the evidence should be received. Fairness can be assured by placing the [Government] and the accused in the same positions they would have been in had the impermissible conduct not take place. However, if the Government can prove that the evidence would have been obtained inevitably, and therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation the [Government] has gained no advantage at trial, and the defendant has suffered no prejudice. Indeed, suppression of the evidence would operate to undermine the adversary system by putting the [Government] in a worse position than it would have occupied without any police misconduct.

In sum, for the reasons set forth herein,

(1) we accept and adopt the findings of fact of the magistrate judge;

(2) we reject the conclusions that the search warrant in issue authorized search and seizure of evidence only of child pornography, and that pursuant to *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), suppression must be granted; and

(3) we conclude that Underwood's computer and computer hardware were seized pursuant to the valid portion of the search warrant and that the evidence in question would have been

---

[3]The magistrate judge notes that while the *Westerlund* court discusses inevitable discovery, it cites the plaint view standard. We see no practical distinction for our purposes as Detective Jackman was lawfully conducting an investigation of Underwood's computer, he saw what immediately appeared to be evidence of child pornography in plain view during his search, and he had a lawful right of access to those photographs as they were accessed automatically during his search for enticement evidence. Under a "plain view" analysis, we find the standard satisfied.

inevitably discovered during the properly authorized forensic search of Underwood's computer for evidence of enticement.

**IT IS THEREFORE ORDERED AND ADJUDGED** that those portions of the Findings of Fact, Conclusions of Law, and Recommendation (DN 54) that are consistent with this Memorandum Opinion and Order are **ACCEPTED AND ADOPTED**; in all other respects, the report is **REJECTED.**

**IT IS FURTHER ORDERED** that the motion of the defendant, Ronald Underwood, to suppress evidence (DN 26) is **DENIED.**

**IT IS SO ORDERED.**